172 N.J. Super. 426 (1979)
412 A.2d 816
HAMPSHIRE HOUSE SPONSOR CORP., A NEW JERSEY CORPORATION; MEDITERRANEAN INVESTMENTS, INC., A NEW JERSEY CORPORATION; AND 234 CONDO SPONSOR CORP., A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
BOROUGH OF FORT LEE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY AND MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, DEFENDANTS. CENTRAL TOWERS COMPANY, A NEW JERSEY LIMITED PARTNERSHIP, T/A NORTHBRIDGE PARK; AND NORTHBRIDGE PARK CO-OP, INC., A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
THE BOROUGH OF FORT LEE, DEFENDANT, AND NORTHBRIDGE TENANTS ASSOCIATION, INTERVENORS. DEAUVILLE TOWERS, A NEW JERSEY LIMITED PARTNERSHIP, PLAINTIFF,
v.
THE BOROUGH OF FORT LEE, DEFENDANT. IMPERIAL ASSOCIATES LTD., A NEW JERSEY LIMITED PARTNERSHIP, PLAINTIFFS,
v.
BOROUGH OF FORT LEE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY AND MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, DEFENDANTS.
Superior Court of New Jersey, Law Division  Bergen County.
Decided December 20, 1979.
*427 James D. Demetrakis for plaintiffs Mediterranean Investments, Inc. and 234 Condo Sponsor Corp.
David Carmel for plaintiff Hampshire House Sponsor Corp.
Kenneth H. Mack for plaintiffs Central Towers Company and Northbridge Park Co-op. Inc. (Greenstone & Sokol, attorneys).
*428 Stephen R. Spector for plaintiff Deauville Towers (Glock & Spector, attorneys).
William C. Rindone, Jr. for plaintiff Imperial Associates Ltd. (Liebowitz, Liebowitz & Clark, attorneys).
Joel M. Ellis for defendant Borough of Fort Lee (Murphy, Ellis & McBride, attorneys).
William Goldberg for intervenors Northbridge Tenants Association.
SMITH, J.S.C.
The question raised by this litigation is whether New Jersey municipalities have authority to regulate conversion of residential rental units into condominiums or cooperatives. Because exclusive jurisdiction to act in this field is vested in the State Legislature, the answer is no.
On November 1, 1979 Fort Lee's governing body adopted Ordinance 79-30 which imposed a moratorium on such conversions. These four unconsolidated cases, instituted by landlords caught in various stages of the conversion process, contest its validity. Each suit was initiated with the signing of an order to show cause and the entire matter submitted on pleadings and briefs for final judgment on the common return day. R. 4:67-5.
According to statistics compiled by the local building inspector's office, approximately 5,900 new apartments were built in Fort Lee from 1960 to 1972. They comprise the bulk of the borough's total existing 9,200 units of rental housing stock. This represents more than 40% of Bergen County's multi-family dwellings of 50 or more units concentrated in a 2.5 square mile area. Yet the critical shortage of available apartments for rent within the municipality continues unabated. Despite the demand, as attested to by a virtually nonexistent vacancy rate, there has been neither production of new buildings nor sale of existing ones in recent years. High construction costs, the *429 vicissitudes of the economy and imposition of stringent rent control have combined to stagnate the market.
The moratorium was enacted in response to a flood of applications for conversion filed by Fort Lee landlords. Prior to this year only Regency (161 units) and 2185 Lemoine Avenue (115 units) had converted. In 1979 the owners of eight buildings with a total of 2,377 units launched conversion proceedings: Northbridge (227), Hampshire House (202), Deauville Towers (54), Imperial Towers (55), Biaritz (49), Horizon House (1,263), 234 Columbia Avenue (20) and Mediterranean Towers West (507). Successful completion of only pending applications will reduce the borough's supply of rental housing by roughly 25%. But, undoubtedly, more landlords will soon abandon ship. All parties agree that absent government subsidy, new rental apartments will not be built in the foreseeable future. Depleted inventory will not be replaced. Suddenly, the Fort Lee tenant has become an endangered species on the brink of extinction.
The first step in the conservation program was to temporarily freeze the conversion process until its negative effect on public welfare could be studied. The preamble to Ordinance 79-30 declares that rapidly vanishing rental space constitutes a housing emergency in the borough. The definition of "dwelling" and "housing space" is identical to language found in the rent leveling ordinance. The measure provides, in pertinent part:
........

Section 2. There is hereby declared a moratorium of the conversion of any housing space into a condominium or cooperative unit.

Section 3. The Mayor shall appoint a committee of seven for the purpose of conducting a comprehensive study of the rental housing space emergency in the Borough. This committee shall consist of one cooperative or condominium owner, the Building Inspector, one realtor and four tenants. This committee shall gather the necessary facts so as to determine and assess the impact of conversions on the local housing needs and with respect to the rights of *430 individuals to adequate housing within their economic means and formulate a plan for maintaining and/or increasing the number of rental units available in the Borough. The committee shall present its report and recommendations to the Mayor and Council within six months of the effective date of this Ordinance.

Section 4. During the existence of this moratorium, no sales or contracts for sale can be entered into, no prospectus issued, and no notice of intent is to be sent to tenants and no one can request a tenant to vacate a unit as a consequence of conversion of a unit to a condominium or cooperative.

Section 5. This moratorium shall expire upon the occurrence of the earliest of the following:
(a) enactment of a federal or state law or regulation protecting the region's residents from a shrinkage in the rental market as a result of condominium or cooperative conversion;
(b) enactment of a borough ordinance protecting the borough's residents from a shrinkage in the rental market as a result of condominium or cooperative conversion;
(c) a vacancy rate greater than 5/100; or
(d) failure to implement the plan of the committee appointed under this Ordinance within two months of the due date of such committee's report and recommendations.

Section 6. If this moratorium would have otherwise expired as a result of Section 5(d) of this ordinance and the vacancy rate for such month during which the moratorium would have expired and the vacancy rate for the two immediately preceding months is less than 4/100 then this moratorium shall be automatically extended for six additional months subject, however, to Sections 5(a), (b) and (c).[1]

Section 7. This Ordinance shall not apply to any conversion, the registration of which has been approved by the Department of Community Affairs; and where Notice of Intent to convert and a full plan of conversion have been given to tenants pursuant to N.J.S.A. 2A:18-61.8 more than 45 days prior to the effective date of this ordinance.[2]
The doctrine of preemption is based upon the principle that a municipality, an agent of the State, cannot act contrary *431 to the State. If the subject matter in which an ordinance operates is the same as that in which the State has acted and if existing statutes are so pervasive or comprehensive that they preclude coexistence of municipal regulation, then the municipality is divested of authority to regulate. Overlook Terr. Mgmt. Corp. v. West New York Rent Control Bd., 71 N.J. 451, 461 (1976); Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348 (1971). An examination of the evolution of the law dealing with conversions of this nature clearly shows that the New Jersey Legislature has preempted the field in which Ordinance 79-30 operates.
Condominiums and cooperatives were virtually unknown in this country prior to the 1960s. Since that time they have grown in popularity to such an extent that they have been recently characterized as "the craze that has swept the country." Condominium Revision Committee Report, Md. Real Prop. Code Ann. § 11-101 et seq. Today every state in the Union has legitimized this type of development by the enactment of appropriate legislation. The New Jersey Horizontal Property Act of 1963 (N.J.S.A. 46:8A-1 et seq.) and the Condominium Act of 1969 (N.J.S.A. 46:8B-1 et seq.) were designed to eliminate title problems encountered under existing real estate law and establish a legal framework for administration of these multi-unit projects. Our Legislature has consistently prohibited municipalities from enacting discriminatory zoning ordinances based upon form of ownership (N.J.S.A. 46:8B-29, 40:55D 58) and our courts have invalidated local attempts to regulate such buildings according to ownership rather than construction and use.[3]Bridge Park Co. v. Highland Park, 113 N.J. Super. 219 (App.Div. 1971); Maplewood Village Ten. Ass'n v. Maplewood, 116 N.J. Super. 372 (Ch.Div. 1971). The Planned Real Estate Development Full Disclosure *432 Act of 1977 recognized the "increased popularity of various forms of real estate development in which owners share common facilities, ... the underlying complexities of these new and proliferating forms, [and] deem[ed] it necessary ... that dispositions in these developments be regulated by the State ...," N.J.S.A. 45:22A 22. In addition, the Division of Housing and Urban Renewal of the Department of Community Affairs, the administrative agency responsible for regulation in accordance with the act (N.J.S.A. 45:22A-24), subsequently promulgated a set of comprehensive and detailed regulations. N.J.A.C. 5:26-1.1 et seq. Yet, despite all this, the door to municipal intervention remained ajar because none of these measures confronted the problem of tenant displacement necessarily generated by conversions.
The Supreme Court, rather than the Legislature, was the forum in which this dilemma was dealt with for the first time. In Brunetti v. New Milford, 68 N.J. 576 (1975), ordinance provisions limiting grounds for eviction were attacked on the basis that they would preclude landlords from obtaining possession in the event of conversion from rental units into cooperatives or condominiums. The challenged sections of the New Milford ordinance were declared void because:
Two lower courts have found provisions in municipal rent control ordinances which enumerate grounds for eviction to be invalid because by the District Court Act (N.J.S.A. 2A:18-53 et seq.) and the Landlord and Tenant Act (N.J.S.A. 2A:42-1 et seq.) the subject was preempted by the State. Barry Gardens v. Passaic, 130 N.J. Super. 369, 380 (Law Div. 1974); Leone Management Corp. v. Bd. of Comm'rs, West N.Y., 130 N.J. Super. 569, 580 (Law Div. 1974). In another case, however, the trial court noted that because the State eviction laws were purely jurisdictional, they may not have preempted the field. Inganamort v. Fort Lee, supra, 120 N.J. Super. at 298-300. With the enactment of N.J.S.A. 2A:18-61.1 in 1974, which sets forth specific enumerated grounds of eviction, there can no longer be any doubt that the Legislature intended to preempt this area of the law. Consequently, we hold that provisions in municipal ordinances which set forth grounds for eviction or dispossession are invalid as having been preempted by state enactments. [at 602-603]
*433 The court then advised the landlord that, because of preemption, his quarrel was with the State of New Jersey rather than the Borough of New Milford:
Having invalidated the ordinance's provisions relating to grounds for eviction in their entirety, it becomes unnecessary for us to dispose of plaintiffs' claim that these provisions prevent them from converting a rental unit into a cooperative or condominium. To pursue this complaint further plaintiffs must challenge the validity of the pertinent State statutes directly. [at 603, n. 26; emphasis supplied]
On February 19, 1976, less than three months after Brunetti, N.J.S.A. 2A:18-61.1-.12 was amended and the door sealed closed on municipal action in this field. The new enactment adds, as a ground for removal, conversion from the rental market to a condominium or cooperative for the first time. It incorporates a timetable and establishes a sequence of conditions precedent to eviction. Any owner who intends to convert must give his tenants 60 days' notice of intention and furnish them with the full conversion plan. Tenants in occupancy are given the exclusive right to purchase for a period of 90 days. Should the tenant elect not to purchase, the landlord may not institute a dispossess action until three years following written demand for possession. Within 18 months following demand for possession, tenants may request the landlord to furnish a reasonable opportunity to examine and rent comparable housing. If such substitute housing is not offered prior to institution of dispossess proceedings, the court is authorized to grant up to five one-year stays of eviction. Stays are automatically renewed for additional one-year periods in cases where landlords do not offer comparable housing. However, only one stay is authorized if the landlord elects to provide the tenant with a hardship relocation compensation waiver of payment of five months rent. N.J.S.A. 2A:18-61.1(k), .2(g), .8, .11.
The vast majority of other jurisdictions provide no special protection for tenants in the event of conversion. The few *434 states that delay removal do so for much shorter periods of time than the three to eight years granted by New Jersey: Conn. Gen. Stat. Ann. § 47-88b(b) (60 days); D.C.Code § 5-1268(b)(1) (120 days); Fla. Stat. Ann. § 718-402(2) (120 days); Ill. Ann. Stat., c. 30, § 330(a) (120 days); Md.Real Prop.Code Ann. § 11-102.1(a) (180 days); Mich. Stat. Ann. § 559.204 (120 days); N.H. Rev. Stat. Ann. § 356B:56II (90 days); N.Y.Gen.Bus.Law § 352 eee(2)(d)(i)[4] (2 years); Tenn. Code Ann. § 64 2723(a) (2 mos.); Va.Code § 55-79.94 (90 days); Wis. Stat. Ann. § 703.08 (120 days).
In sum, the New Jersey statutory scheme affords condominiums and cooperatives the same status as one-family homes. The conversion of an apartment is the equivalent of the sale of a one-family, tenant-occupied home. The conversion process does not increase or decrease housing stock; it only changes the status of occupants. Marketing practices are policed by the Department of Community Affairs. When conversions occur, the interests of all concerned are balanced: owners, incumbent tenants who desire to purchase their apartments, occupants who cannot afford or choose not to purchase, and people seeking decent housing who may find otherwise unavailable quarters. There is no room for individual municipalities to helter-skelter adopt regulations tipping the scales in favor of any particular group. That being so, Fort Lee obviously may not declare a moratorium on conversions while it studies matters outside the ambit of legislative authority.
The current rash of conversion applications by owners seeking to divest themselves of residential rental property is the latest symptom of our chronic statewide housing shortage. Difficulties encountered by individual municipalities attempting to cope with a related aspect of the problem was recently noted by *435 Justice Mountain: "Rent control implicates complex economic, social and political issues. The state legislature is better equipped than most municipalities to formulate a comprehensive approach to this delicate problem." Helmsley v. Fort Lee, 78 N.J. 200, 243 (1978). While the New Jersey Legislature has remained silent on rent control, it has spoken comprehensively on the subject of conversion. Reform, if needed, must come from the State Legislature. Fort Lee Ordinance 79 30 is void in its entirety.
NOTES
[1] This moratorium can remain in effect a maximum of 14 months. Rent control in Fort Lee originally was to have expired after one year. It is now eight years old. Ordinance 72-1, as amended.
[2] The retroactivity of this provision affects all buildings' applications except Hampshire House.
[3] Only two states permit differential treatment by authorizing municipalities to zone separately for condominiums. N.C. Gen. Stat. § 47A-27; Tex.Prop. Code Ann.Tit. 1301a, § 23.
[4] New York offers alternative conversion plans. In some cases, senior citizens, those over 62 years old with incomes less than $30,000, may not be evicted at all.