173 N.J. Super. 45 (1980)
413 A.2d 356
ROUND VALLEY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF CLINTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, TOWNSHIP COUNCIL OF THE TOWNSHIP OF CLINTON AND PLANNING BOARD OF THE TOWNSHIP OF CLINTON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1980.
Decided March 5, 1980.
*47 Before Judges MATTHEWS, ARD and POLOW.
Roger M. Cain argued the cause for appellants Township of Clinton and Township Council of the Township of Clinton (Felter, Cain & Shurts, attorneys).
Francis P. Sutton argued the cause for appellant Planning Board of the Township of Clinton.
Michael J. Herbert argued the cause for respondent (Sterns, Herbert & Weinroth, attorneys).
A brief was filed on behalf of amicus curiae South Branch Watershed Association by Environmental Action Institute (Benjamin Levine, of counsel).
PER CURIAM.
Defendants appeal from a judgment of the Law Division invalidating the Township of Clinton's land use ordinance[1] as it applied to plaintiff's property. The trial judge found the ordinance to be impermissibly exclusionary to the extent that it did not make adequate provision for the municipality's fair share of the least-cost housing needs in its housing region.
*48 Plaintiff Round Valley, Inc., owned a 790-acre tract of land in Clinton Township located just south of the intersection of Interstate Route 78 and State Highway 31. The tract consisted of two parcels located on opposite sides of Route 31: the Beaverbrook site, which comprises 321 acres on the west side of Route 31 and includes the 150-acre Beaverbrook Country Club and Golf Course, and the Gobel tract, which is located on the east side of Route 31 and comprises 469 acres. Prior to this litigation the Beaverbrook tract had been zoned for residential use characterized as R-3 (one-acre minimum lot size). The Gobel tract was zoned for Research-Office-Manufacturing (ROM) development and had been for some time prior to its purchase by Round Valley, Inc.
Plaintiff proposed to construct a Planned Unit Development (PUD)[2] consisting of 3500 units at a density of 4.5 units an acre on the two tracts. The proposal was submitted to the township planning board in January 1974 at an informal meeting between members of the board and representatives of Round Valley, Inc. Plaintiff was advised that no action would be taken upon the PUD proposal until the planning board had completed its revision of the township's zoning ordinance and a public meeting had been held concerning the plan. Prior to submission of the proposal the township council had imposed a building moratorium which was to last through December 1974.
In March 1975 the members of the township council and the planning board met with representatives of plaintiff and informed plaintiff that it would be at least another year before the township's planner could sufficiently evaluate the PUD proposal so as to permit the planning board to act on it.
*49 On July 21, 1975, the township planner submitted a report to the planning board which recommended that no action be taken on plaintiff's proposal until the land use portion of the township's master plan was completed. The land use portion of the master plan was adopted in November 1976. In February 1977 work on the township's proposed zoning ordinance implementing the land use plan was substantially completed. Plaintiff was advised that the Gobel tract would continue to be zoned ROM, but that the zoning classification of the Beaverbrook tract would be changed to permit a PURD[3] option, the latter classification being consistent with plaintiff's original application.[4] Plaintiff thereafter instituted this suit.
After an intermittent trial which consumed all or part of 29 trial days, the trial judge declared that the township's zoning ordinance was unconstitutionally exclusionary as applied to plaintiff's property. He directed the township to immediately revise the subdivision provisions of its land use ordinance as they applied to the plaintiff's land. The township amended its ordinance to comply with the trial judge's directives[5] in this section of the order except for the provisions of the judgment requiring the township to reduce the performance bonding requirements to a rate not exceeding 100% of the expected cost of off-site *50 improvements and the provision requiring reduction of the maintenance guarantee requirements imposed upon a developer for public facilities to be constructed by him.
The trial judge also ordered the township to reduce the requirement of a 50-acre minimum tract size for PUD-PURD development and ordered the township to rezone the Gobel tract retaining the ROM classification and permitting a PUD option. The trial judge also ordered the appointment of a planning expert to oversee implementation of the judgment and to review the submission by the township of the aforementioned amendments to the land use ordinance. The expert was also empowered to prepare a proposed PUD ordinance which would require the township to deal with proposed PUD's in a more flexible and expeditious manner than required for regular subdivision and site plan applications. The proposed planning expert was empowered by the judgment to determine at what density the plaintiff's land should be developed. The order did not change the zoning classification of the Beaverbrook tract.
Post-trial motions were filed with the assignment judge,[6] who stayed those portions of the judgment dealing with the appointment and powers of the proposed planning expert and the rezoning of the Gobel tract pending resolution of these issues on appeal. As indicated, the township voluntarily amended its ordinance to eliminate certain provisions found to be undue cost exactions by the trial judge. These amendments were approved by the assignment judge.
The briefs and appendices filed with this court indicate that on August 31, 1978 the Gobel tract was sold to Seed Realty Corporation, a wholly-owned subsidiary of Exxon Research and Engineering Company, to be used for ROM purposes. This fact was confirmed at oral argument.
*51 The sale of the Gobel tract to Seed Realty Corporation renders most of the substantive issues presented on appeal moot.[7] We recognize, however, that by reason of its ownership of the Beaverbrook tract, plaintiff continues to have standing to raise the issues remaining for our determination. South Burlington Cty. NAACP v. Mt. Laurel Tp., 67 N.J. 151, 159 n. 3 (1975), app. dism. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975).
A careful reading of the opinion and judgment reveals an ambiguity with respect to the intendment of the decision as it affects the entire zoning ordinance. We are satisfied it is directed only to the property owned by plaintiff. As indicated above, the trial judge held that the township's zoning ordinance was unconstitutionally exclusionary only as it applied to plaintiff's property. As stated in the trial judge's opinion:
By declaring the ordinances herein exclusionary and therefore unconstitutional ... it is meant that the ordinances are held to be so only as to the plaintiff's property ... but that the ordinances shall remain in full force and effect as to subdivision, site plan and zoning in all other respects ...
The order of judgment entered in this matter reflects the above intention.
It is clear that the primary purpose of this litigation was to effectuate the rezoning of the Gobel tract so as to permit the construction of plaintiff's proposed PUD. This intention is apparent from the record which amply demonstrates that the primary source of disagreement among the parties was the zoning classification of the Gobel tract.
*52 Our Supreme Court's decision in South Burlington Cty. NAACP v. Mt. Laurel Tp., supra, and Oakwood at Madison, Inc. v. Madison Tp., 72 N.J. 481 (1977), were intended to address the problems of exclusionary zoning. However, these decisions also make clear that they are not intended to replace the rights and remedies afforded to landowners under the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq.. To utilize the principles enunciated in Mt. Laurel and Oakwood at Madison to invalidate the considered judgment of the municipality regarding the zoning classification of one parcel of property amounting to approximately 3.5% of the total land area of the township is to distort the clear import of these decisions. We are not here faced with the same situation as that which was presented to the Supreme Court in Oakwood at Madison, where it was deemed fair and equitable to grant the corporate plaintiff the right to begin construction because it had underwritten the cost of six years of litigation with the intent of invalidating the entire zoning scheme of Madison Township. Oakwood at Madison, supra at 548-551. In the present case, plaintiff neither sought nor succeeded in having the township's land use ordinances declared unconstitutional generally. To use the principles enunciated in Mt. Laurel and Oakwood at Madison to invalidate the zoning classification of a single isolated parcel of land without requiring a complete revision of the township's comprehensive zoning scheme is to subvert the purposes for which the decisions were intended, i.e., to encourage comprehensive planning by municipalities to make provision for the housing needs of persons of low and moderate income. The remedy sought by plaintiff in this litigation was akin to that afforded by N.J.S.A. 40:55D-70(d). In declaring that the zoning and land use ordinances of the township were invalid only as they applied to plaintiff's property, the trial judge's action amounted to the granting of a subsection (d) use variance, which is properly the function of the township's zoning board of adjustment. This was error. Accordingly, *53 we reject the reasoning of the trial judge with respect to the application of the principles of Mt. Laurel and Oakwood at Madison to this case, and we reverse the judgment of the trial court invalidating the application of the 1977 Land Use Ordinances of Clinton Township to plaintiff's property. In so doing, we also reverse that part of the judgment providing for the appointment of a planner to oversee the implementation of the court's order. Our determination today makes the planner's appointment superfluous. In addition, the appointment was premature. In Oakwood at Madison, supra at 553-554, the trial judge was given discretionary authority to appoint a zoning or planning expert "in the event of undue delay in compliance with this opinion...." We see no need to make the appointment before such a determination.
Defendants also contend that the trial judge erred in holding that (1) the township's ordinance requiring a developer to submit a performance guarantee for on-tract improvements not to exceed 120% of the cost of such improvements is an undue cost exaction; (2) the township's ordinance requiring a developer to file a maintenance guarantee for a two-year period following completion of proposed on-tract improvements is an undue cost exaction, and (3) the township's ordinance setting a 50-acre minimum tract size for PUD and PURD is invalid. We agree with defendants.
With regard to the performance and maintenance guarantees, the Supreme Court's decision in Divan Builders, Inc. v. Wayne Tp. Planning Bd., 66 N.J. 582 (1975), specifically authorized municipalities to adopt ordinances requiring the installation of off-site improvements as a condition of subdivision approval, id. at 596, and permits municipalities to decide the method of financing those improvements, including the imposition of bonding requirements upon a developer for the estimated cost of the improvements, id. at 599-602. In addition, performance guarantees not to exceed 120% of the estimated cost of required improvements and two-year maintenance guarantees are specifically *54 authorized by N.J.S.A. 40:55D-53(a). We are satisfied that these requirements are not undue cost exactions within the meaning of Oakwood at Madison, supra, 72 N.J. at 520. Accordingly, we reverse the trial court's order invalidating these provisions of the township's ordinance.
We are also satisfied with the legality of the 50-acre minimum tract size requirement contained in the ordinance for PUD and PURD development. N.J.S.A. 40:55D-6 provides that PUD and PURD development can be undertaken on areas with minimum contiguous acreage of 10 and 5 acres, respectively. The minimum acreage requirement is not mandatory but rather discretionary. Additionally a municipality is not required to adopt any PUD or PURD plan. N.J.S.A. 40:55D-45; N.J.S.A. 40:55D-65(c).
N.J.S.A. 40:55D-65 gives a large degree of discretion to municipalities in providing for "planned developments" in their zoning ordinances. As indicated in Pascack Ass'n, Ltd. v. Washington Tp., 74 N.J. 470 (1977), "it would be a mistake to interpret Mount Laurel as a comprehensive displacement of sound and long established principles concerning judicial respect for local policy decisions in the zoning field." Id. at 481. In Pascack the court cited the following from Bow and Arrow Manor v. West Orange, 63 N.J. 335 (1973), as "continuing sound law":
"It is fundamental that zoning is a municipal legislative function, beyond the purview of interference by the courts unless an ordinance is seen in whole or in application to any particular property to be clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the statute. N.J.S.A. 40:55-31, 32. It is commonplace in municipal planning and zoning that there is frequently, and certainly here, a variety of possible zoning plans, districts, boundaries, and use restriction classifications, any of which would represent a defensible exercise of the municipal legislative judgment. It is not the function of the court to rewrite or annul a particular zoning scheme duly adopted by a governing body merely because the court would have done it differently or because the preponderance of the weight of the expert testimony adduced at a trial is at variance with the local legislative judgment. If the *55 latter is at least debatable it is to be sustained." [74 N.J. at 481; citation omitted]
We consider the principles expressed in Bow and Arrow Manor controlling here, and we reverse the trial court's invalidation of the township's 50-acre minimum tract size requirement for the construction of PUD and PURD developments.
In conclusion, we hold that (1) the sale of the Gobel tract renders moot much of the trial court's judgment; (2) the trial judge erred in declaring the township's land use ordinances unconstitutional only insofar as they applied to the plaintiff's land, thereby misusing the principles of Mt. Laurel and Oakwood at Madison; (3) the trial judge erroneously invalidated the maintenance and performance guarantee provisions of the township's land use ordinance, which are within the parameters established by the Legislature in the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., and (4) the trial judge erred in invalidating the township's 50-acre minimum tract requirements for PUD and PURD development. Accordingly, the whole of the judgment below is reversed.
NOTES
[1] For purposes of this opinion, the term "land use ordinance" refers to the township's codification of its ordinances dealing generally with the administration and implementation of the township's land use policies, including the subdivision, site plan and zoning ordinances of the township.
[2] "... means an area with a specified minimum contiguous acreage of 10 acres or more to be developed as a single entity according to a plan, containing one or more residential clusters or planned unit residential developments and one or more public, quasi-public, commercial or industrial areas...." N.J.S.A. 40:55D-6.
[3] "... means an area with a specified minimum contiguous acreage of 5 acres or more to be developed as a single entity according to a plan containing one or more residential clusters, which may include appropriate commercial, or public or quasi-public uses all primarily for the benefit of the residential development." N.J.S.A. 40:55D-6.
[4] The development plaintiff proposed to construct on the Beaverbrook tract was a planned unit residential development. Although plaintiff proposed to construct its PURD at a higher density than permitted by the township, no attempt was made at trial to have the zoning classification of the Beaverbrook tract changed from PURD option.
[5] The amendments made in conformance with the order are not relevant to the issues on appeal.
[6] The record indicates that the trial judge left the bench during April 1978. Therefore, all post-trial motions were heard by the assignment judge.
[7] The sale of the Gobel tract has eliminated the need for us to address the issues relating to Clinton Township's status as a "developing municipality," including the issues of the appropriate region and fair share allocation of the least-cost housing needs of the region. Accordingly, no view is expressed with respect to them in this opinion.