174 N.J. Super. 231 (1980)
416 A.2d 71
PLAZA JOINT VENTURE AND EDWARD CANTOR, PLAINTIFFS-RESPONDENTS,
v.
CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT, AND JAMES E. CARMACK, CATHERINE M. CARMACK, HENRY KATZ, BERTHA KATZ, DAVID APFELBAUM AND ADELINE APFELBAUM, DEFENDANTS-INTERVENORS AND APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1980.
Decided May 19, 1980.
*234 Argued before Judges BISCHOFF and BOTTER.
Decided by Judges BISCHOFF, BOTTER and MORGAN[1].
Matthew H. Powals, City Solicitor, argued the cause for appellant City of Atlantic City.
Arthur Montano argued the cause for intervenors-appellants (Montano, Summers, Mullen and Manuel, attorneys).
Stephen Hankin argued the cause for respondents (Hankin & D'Amato, attorneys).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
The issue presented by this appeal is whether the state has preempted the power of the City of Atlantic City to enact "an ordinance regulating the conversion of rental units to condominiums" and declaring a "moratorium on the conversion of any rental unit into a condominium for a period of one year" from passage of the ordinance.
*235 Plaintiffs Plaza Joint Venture and Edward Cantor hold an option to purchase Plaza Apartments, a 159-unit apartment building in Atlantic City, and are obligated to pay the sum of $850,000 for the option. They intend to purchase the premises and convert the apartments into condominiums. In pursuit of their intention to convert, plaintiffs have incurred expenses of $382,500. On August 24, 1979 plaintiffs filed an application for registration and a public offering statement with the State Department of Community Affairs under the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A 21 et seq.
On November 8, 1979 the Board of Commissioners of the City of Atlantic City adopted Ordinances 69-1979 and 70-1979 which regulate the conversion of rental units into condominiums. In enacting Ordinance 69-1979 the board found "that an emergency exists within the ... City with respect to the unavailability of rental space" and that "the advent of casino gambling has escalated property values ...," contributing to "the trend toward the conversion of rental units to condominiums...." The conversion of existing rental units to condominiums, the board continues, would remove them from the rental housing market, "forcing the displacement of a large number of residential tenants, many of whom are senior citizens or persons of low or moderate income levels." The board concluded that the acute housing shortage in Atlantic City and nearby municipalities will make it impossible for the displaced tenants to find decent housing at a price they can afford; that these tenants were unable to have anticipated or prepared to meet the radical changes in housing demands created by casino gambling, and that a "need exists for legislation to afford tenants relief from the situation without unnecessarily infringing on the property rights of the owner."
The board determined that "the maintenance of the current numbers of rental units available will foster and improve the health, safety and welfare of its residents by insuring the *236 availability of a minimum number of residential rental units...." In order to preserve the availability of rental housing, Ordinance 69-1979 declared a moratorium on the conversion of rental units in the following terms:
(a) There is hereby declared a moratorium on the conversion of any rental unit into a condominium for a period of one (1) year commencing upon the passage of this Ordinance.
(b) During the existence of this moratorium no sales, or contracts for sale can be entered into; no prospectus issued; and no notice of intent is to be sent to tenants; and no one can request a tenant to vacate a unit as a consequence of conversion of a unit to a condominium.
(c) If the vacancy rate at the time when the aforesaid moratorium would have otherwise expired is less than five percent (5%), then this moratorium shall automatically be extended for six (6) additional months, but shall not be extended further.
(d) The Notice of Eviction, pursuant to N.J.S.A. 2A:18-61.2(g), shall not be given until the termination of the aforesaid moratorium.
The ordinance also provides for the appointment of a committee to study and "assess the impact of conversion on local housing needs" and "formulate a plan for maintaining and or increasing the number of rental units available." Finally, the ordinance requires registration of notices of conversion and provides for relocation assistance by evicting landlords.
Ordinance 70-1979, adopted the same day, prohibits any conversion, unless one parking space is provided on the premises for each condominium unit.
On November 9, the day after the ordinances were adopted, plaintiffs filed a complaint in lieu of prerogative writs against the City of Atlantic City, challenging the validity of the ordinances and seeking a restraint against their enforcement. The city filed an answer and the trial judge granted appellant tenants leave to intervene. Following a hearing on an order to show cause, the judge issued a letter opinion dated January 3, 1980, granting an interlocutory injunction against enforcement of the ordinances because the subject matter of Ordinance 69-79 appeared to be "preempted by state statutes," and Ordinance 70-79 appeared to be "barred by N.J.S.A. 40:8B 29 [46:8B-29], which prohibits zoning ordinances that discriminate on the basis *237 of the form of ownership." Defendant's application for a stay of the injunction pending appeal was denied.
Defendants and intervenors moved in this court for leave to appeal and for a stay of the injunction pending appeal. We denied the motion for a stay but granted leave to appeal to consider plaintiffs' challenge to Atlantic City Ordinance 69-1979 on constitutional grounds and on the grounds that the subject of the ordinance had been preempted by state action. We accelerated disposition, electing to determine the appeal on the papers submitted on the motion pursuant to R. 2:11-2 and giving all parties opportunity to submit additional papers and be heard at oral argument.
On this appeal defendant City of Atlantic City and the intervenors contend:
(1) The enactment of Ordinance 69-1979 is a valid exercise of the police power of the city, and
(2) The Legislature has not preempted the subject matter of the ordinance.
It is now firmly established that N.J.S.A. 40:48-2 constitutes an abundant reservoir of police power granted municipalities by the Legislature. Inganamort v. Fort Lee, 62 N.J. 521, 536 (1973). Ordinances enacted in support of this police power carry a presumption of validity and there is a heavy burden on anyone seeking to overturn such ordinances. Hutton Pk. Gardens v. West Orange Town Council, 68 N.J. 543, 564 (1975). Moreover, legislative bodies enacting ordinances are presumed to act on the basis of adequate factual support and their enactments are presumed to rest upon some rational basis within their knowledge and experience. Id. at 565. And, it is now well settled that municipalities have power to enact a reasonable moratorium on certain land uses while studying a problem and preparing permanent regulations. Deal Gardens, Inc. v. Loch Arbour Bd. of Trustees, 48 N.J. 492, 499-500 (1967); Monmouth Lumber Co. v. Ocean Cty., 9 N.J. 64, 74-75 (1952); Cappture v. Elmwood Pk. Bd. of Adj., 133 N.J. Super. 216, 221 (App.Div. 1975); Meadowland Reg'l etc. v. Hackensack, 119 N.J. *238 Super. 572, 578 (App.Div. 1972), certif. den. 62 N.J. 72 (1972); N.J. Shore Bldrs. v. Ocean Tp., 128 N.J. Super. 135, 137 (App.Div. 1974), certif. den. 65 N.J. 292 (1974); Campana v. Clark Tp., 82 N.J. Super. 392, 397 (Law Div. 1964). See Payne, "A Survey of New Jersey Eminent Domain Law," 30 Rutg.L.Rev., 1111, 1200 1201 (1977).
However, an ordinance properly enacted and within the police power of the municipality will be invalid if it intrudes upon a field preempted by the Legislature. When the Legislature has preempted a field by comprehensive regulation, a municipal ordinance attempting to regulate the same field is void if the municipal action adversely affects the legislative scheme. Fair Lawn Ed. Ass'n v. Fair Lawn Bd. of Ed., 79 N.J. 574, 586 (1979); Summer v. Teaneck, 53 N.J. 548, 554 (1969). And
A legislative intent to preempt a field will be found either where the state scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation or where the local regulation conflicts with the state statutes or stands as an obstacle to state policy expressed in enactments of the Legislature. [Garden State Farms, Inc. v. Bay, 77 N.J. 439, 450 (1978); emphasis supplied].
Justice Schreiber, in Overlook Terrace Mgmt. Corp. v. West New York Rent Control Bd., 71 N.J. 451 (1976), stated that pertinent questions for consideration in determining whether preemption had occurred, were:
1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect? ...
2. Was the state law intended, expressly or impliedly, to be exclusive in the field? ...
3. Does the subject matter reflect a need for uniformity? ...
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? ...
5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature? ... [Id. at 461-462; citations omitted]
*239 Our review of pertinent statutes leads us to the conclusion that the subject of Ordinance 69-1979 has been preempted.
The Legislature recently enacted comprehensive legislation regulating condominiums. The Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A 21 et seq., regulates the development, offering and sale of various forms of real estate development in which owners share common facilities or property interests, including condominiums. N.J.S.A. 45:22A-23(h). This act requires a developer to file a detailed registration with the Division of Housing and Urban Renewal before offering or disposing of any interest in a planned real estate development, and to provide a purchaser with an extensive public offering statement, N.J.S.A. 45:22A-29, and the Division is given broad enforcement powers. N.J.S.A. 45:22A-32 to 35. The Disclosure Act further provides for private, double damage actions to remedy any violations of the disclosure requirements. N.J.S.A. 45:22A-37. The Division of Housing and Urban Renewal, the administrative agency responsible for regulation under the act (N.J.S.A. 45:22A-24), promulgated comprehensive and detailed regulations. N.J.A.C. 5:26-1.1 et seq. Moreover, while the Disclosure Act provides a uniform means for regulating, investigating and monitoring planned developments, the Condominium Act, N.J.S.A. 46:8B-1 et seq., provides detailed structural guidelines for the creation of condominiums.
In 1976 the Legislature amended the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 et seq., to afford residential tenants substantial procedural safeguards and the opportunity to obtain comparable housing when an owner converts an apartment building to a condominium. N.J.S.A. 2A:18-61.1(k); L. 1975, c. 311 (effective February 19, 1976). As amended, the act requires an owner who intends to convert an apartment building into a condominium to give tenants 60 days' notice of his intent to convert and to provide the tenant the full plan of conversion prior to serving notice. The notice of intention must inform the tenant of his right to purchase ownership in the premises at a specified price, *240 including his exclusive right of purchase within 90 days, and of his other rights secured by the Act. N.J.S.A. 2A:18-61.8.
If a tenant decides not to purchase a condominium, the owner must give him three years' notice prior to instituting an action for eviction, and no action shall be instituted prior to the expiration of a written lease. N.J.S.A. 2A:18-61.2(g). The owner is further obligated to offer the tenant comparable rental housing when the tenant so requests within 18 months after receiving notice of eviction. N.J.S.A. 2A:18-61.11. Moreover, when an action for eviction is filed, the court must authorize up to five one-year stays of eviction with reasonable rent increases until the tenant is offered and provided a reasonable opportunity to examine and rent comparable housing. After the first of these stays is entered, however, the owner may prevent the entry of any further stays by paying the tenant hardship relocation compensation equal to five months' rent. Id.
In order to ensure compliance with its provisions, the amended Anti-Eviction Act vests the Department of Community Affairs with the authority to adopt rules and regulations setting forth the procedures to be followed by evicting landlords, the rights and duties of tenants, and the types of real estate transactions subject to the act. N.J.S.A. 2A:18-61.12. Pursuant to this authority the Department has adopted extensive rules governing condominium and cooperative conversions. See N.J.A.C. 5:24-1.1 et seq.
Since the adoption of the casino gambling amendment to the New Jersey Constitution in 1976, N.J.Const. (1947), Art. IV, § 7, par. 2 D, the Legislature has adopted the Casino Control Act, N.J.S.A. 5:12-1 et seq., which imposes stringent controls over that industry and created a special agency to license and regulate casinos. N.J.S.A. 5:12-50 et seq. The Legislature has continued to maintain close contact and scrutiny over problems developing within the industry and in Atlantic City, the only city where gambling is legally permissible. This appears quite *241 clearly from the 1978 amendments to the Anti-Eviction Act, N.J.S.A. 2A:18-61.13 et seq.; L. 1978, c. 139. That statute was the Legislature's specific response to the developing housing crisis created by the advent of casino gambling, and provided additional substantial protection for tenants in Atlantic City in danger of eviction by the owner of an apartment house retiring the premises from the rental market.[2]
It is clear from these statutes that the Legislature has viewed the housing crisis in Atlantic City, including the conversion of rental units to condominiums, and casino gambling as an integrated problem and provided a comprehensive solution by amending the Anti-Eviction Act. Moreover, viewing the problems facing tenants apart from the impact of casino gambling, the Legislature has provided a broad integrated plan to balance the rights of tenants with the rights of owners and potential purchasers of condominiums. It is clear that preemption of the field has occurred. Hampshire House Sponsor Corp. v. Fort Lee, 172 N.J. Super. 426 (Law Div. 1979).
It is appropriate to note that there is a presumption that enactment of state legislation creating a state agency preempts municipal control over that agency and the field it regulates. Overlook Terrace Mgmt. Corp. v. West New York Rent Control Bd., supra, 71 N.J. at 464. Here, the Legislature has vested the Division of Housing and Urban Renewal and the Department of Community Affairs with broad powers to regulate the conversion of rental units into condominiums and to protect tenants evicted as a result of conversion.
*242 We conclude the legislative scheme regulating the creation, conversion and operation of condominiums and the eviction of tenants from rental units intended for conversion with special consideration for Atlantic City tenants similarly circumstanced is so comprehensive as to clearly evidence a legislative intent to preempt the field, protect condominiums from discrimination and proscribe municipal regulation based on the form of ownership. N.J.S.A. 46:8B-29; cf. Bridge Park Co. v. Highland Park, 113 N.J. Super. 219, 221-222 (App.Div. 1971). The conflict between the state legislation and municipal Ordinance 69-1979 is patent. The Anti-Eviction Act provides in specific terms that conversion of rental units into condominiums is a ground for eviction. The ordinance before us effectively  albeit temporarily  eliminates conversion as a ground for eviction. The ordinance is therefore "invalid as having been preempted by state enactments." Brunetti v. New Milford, 68 N.J. 576, 603 (1975). Ordinance 69-1979, by prohibiting the conversion of rental units to condominiums for the stated time period, clearly obstructs the state policy of permitting conversion to proceed while affording protection to tenants.
We affirm the judgment entered in the Law Division holding Ordinance 69-1979 invalid and remand the matter for the entry of a judgment permanently enjoining its enforcement and for further proceedings on other pending issues not here considered.
NOTES
[1] All parties agreed to argument before two judges with decision by three judges.
[2] We have been informed that there is additional legislation proposed before the State Assembly which, if enacted, will establish a two-year statewide moratorium on the conversion of rental housing into cooperatives or condominiums. Assembly Bill 1032 (1980) (referred to Committee on Commerce, Industry and Professions).