AMN, INC. OF NEW JERSEY, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF SOUTH BRUNSWICK RENT LEVELING BOARD, A MUNICIPAL AGENCY OF THE TOWNSHIP OF SOUTH BRUNSWICK, DEFENDANT-APPELLANT.

Argued April 19, 1983—Decided July 12, 1983.

520

*Mark L. Antin* argued the cause for appellant (*Gennet & Kallmann*, attorneys).

*Christopher S. Tarr* argued the cause for respondent (*Smith, Stratton, Wise, Heher & Brennan*, attorneys; *Richard J. Pinto*, on the brief).

*Kenneth E. Meiser*, Acting Director, Division of Public Interest Advocacy, argued the cause for *amicus curiae*, New Jersey Department of the Public Advocate (*Joseph H. Rodriguez*, Public Advocate, attorney; *Kenneth E. Meiser* and *David Sciarra*, Assistant Deputy Public Advocate, on the briefs).

The opinion of the Court was delivered by

GARIBALDI, J.

The sole issue here is the proper interpretation of the Rent Control Ordinance (Ordinance) of the Township of South Brunswick. Specifically, does the language of the Ordinance that exempts "housing units of two units or less" apply to owners of two or fewer condominium units in one building? In determining the scope of the Ordinance, we consider its language, the probable intent of its drafters, the reasonableness of our inter-

pretation, and the condominium conversion policy of the State as expressed in our statutes.

Prior to its conversion into condominium ownership in 1973 or 1974,[1] Carnegie Commons was a single story garden apartment complex owned by one corporation. It consisted of two buildings with a total of 36 units, 20 units in one building and 16 units in the other building.

By 1976, 10 of the 36 condominium units had been sold to individuals who became owner-occupiers. The remaining 26 condominium units were sold to one individual, John MacFarlane, who subsequently sold two of those units.[2]

In late 1979 or early 1980, MacFarlane sold the 24 remaining condominium units to plaintiff AMN, Inc. (AMN), and during 1980 AMN sold 23 condominium units to 14 individuals. AMN retained one condominium unit. These 24 condominiums are the subject of the litigation. Each owner now owns no more than two units and rents his units to tenants.[3] AMN acts as managing agent for these owners with respect to the rental of the units.[4]

---

[1]There is a discrepancy in the record as to whether the complex was converted to condominium ownership in 1973 or 1974.

[2]Between 1976 and 1980, John MacFarlane, and the plaintiff, respectively, made various applications to the Township of South Brunswick Rent Leveling Board, the defendant, for rent increases for the 24 units. Although not raising this defense in its answer, defendant argues in its briefs that plaintiff is now estopped to deny application of the rent ordinance to the condominium units. If defendant wishes to pursue this defense, we suggest that on remand defendant amend its answer to include it. We express no opinion as to the merit of the defense.

[3]The record is not clear whether more than one of the present tenants was a preconversion tenant, *i.e.*, a tenant who had rented his or her unit prior to its conversion to condominium ownership.

[4]For the purposes of deciding the motion for summary judgment, the trial judge assumed that the individual owners were the "true" owners of the condominium units, but in a footnote stated that there may be a factual question as to whether these individuals or AMN are the "true" owners.

In 1975 the Township of South Brunswick enacted a Rent Control Ordinance. The second paragraph of section 13–2 of the Ordinance specifically exempts from rent control "housing units of two units or less." From time to time the Township has amended the Ordinance, and in 1979 the Township specifically amended the second paragraph of section 13–2, but did not amend the language in question.

On or about January 1, 1981, AMN, on behalf of itself and the other owners, increased the rents for the condominium units without seeking the approval of defendant Township of South Brunswick Rent Leveling Board (Board). Certain of the tenants affected then applied to the Board for a determination of whether the Ordinance was applicable to the condominium units. The Board held hearings and subsequently adopted a resolution stating that the condominium units were subject to the Ordinance and that the proposed rent increases were, therefore, null and void.

AMN, again on behalf of itself and the other owners, filed in the Superior Court, Law Division, a verified complaint in lieu of prerogative writs and an order to show cause, seeking declaratory and injunctive relief against the Board and against enforcement of the Board's resolution. Defendant filed a notice of cross-motion for summary judgment.[5] After a hearing, the trial court held in a letter opinion that the Ordinance was applicable to the condominium units, and thereby granted defendant's cross-motion for summary judgment.

Plaintiff appealed. The Appellate Division in an unreported opinion reversed the trial court's decision and remanded the case

---

Similarly, the Appellate Division stated in a footnote that there may be a factual dispute over ownership that may have to be determined on remand. We too suggest that if the ownership issue is hereafter raised by defendant, that it be determined on remand.

[5]Although plaintiff apparently never moved for summary judgment, the trial court treated the hearing on the adjourned return date of the order to show cause as one on cross-motions for summary judgment.

to the trial court to enter an order precluding enforcement of the Ordinance against owners of two condominium units or less in a particular structure.

We granted the defendant's petition for certification. 91 *N.J.* 262 (1982). We affirm the Appellate Division's judgment of remand, but modify the terms of the remand to include a determination of the number of preconversion tenants and to adjudicate the tenants' status as protected tenants under *N.J. S.A.* 2A:18–61.1 through .21 and *N.J.S.A.* 2A:18–61.22 through .39.

I

Plaintiff does not contest the constitutionality of the Ordinance or its application to owners of three or more condominium units in one building. Rather, plaintiff claims that a condominium unit is a separate dwelling, like a single family house, and should be treated under the law as a separate dwelling.

The trial court focused on the physical structure of the building, rather than on the character of condominium units themselves. The court found that the language of the Ordinance was unambiguous and clearly applied to buildings containing three or more condominium units. Thus, whether a dwelling or a unit was subject to the Ordinance depended solely on how many units were in one building or were otherwise attached. As long as there were more than two units in a structure, then each unit would be subject to the Ordinance.

The Appellate Division rejected the trial court's conclusion that the text of the Ordinance was unambiguous and found the Ordinance unclear in its application to condominiums. We agree.

It is undisputed that the drafters of the Ordinance did not consider or even contemplate whether condominium units should be included under the Ordinance. In construing the language of an ordinance, it is well established that courts apply the same rules of judicial construction as they apply when

construing statutes. *Camarco v. City of Orange,* 61 *N.J.* 463, 466 (1972); 1A Sands, *Sutherland, Statutory Construction* § 30.06 (4th ed. 1972). Generally, a court's duty in construing a statute is to determine the intent of the Legislature. In cases such as this, where it is clear that the drafters of a statute did not consider or even contemplate a specific situation, this Court has adopted as an established rule of statutory construction the policy of interpreting the statute "consonant with the probable intent of the draftsman 'had he anticipated the situation at hand.'" *J.C. Chap. Prop. Owner's etc. Assoc. v. City Council,* 55 *N.J.* 86, 101 (1969) (quoting *Dvorkin v. Dover Tp.,* 29 *N.J.* 303, 315 (1959)); *Safeway Trails, Inc. v. Furman,* 41 *N.J.* 467, appeal dismissed and *cert.* den., 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.*2d 84 (1964). Such an interpretation will not "turn on literalisms, technisms or the so-called rules of interpretation; [rather] it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation." *J.C. Chap. Prop. Owner's,* 55 *N.J.* at 100.

The adoption of a test that relies on the physical structure of the building to determine whether it is subject to rent control can lead to unfair, illogical, and anomalous results. An owner of two condominium units in a building consisting of two or fewer condominium units would not be subject to rent control, but the owner of a single condominium unit in a building consisting of three or more condominium units would be subject to rent control. Likewise, although the owner of a detached single family house would not be subject to rent control, if three or more single family dwellings were attached, as is often the case with town houses, each would be subject to rent control.

For purposes of rent control, we perceive no reason why the drafters of the Ordinance would have intended to treat owners of single dwelling units differently, based solely on whether their units are attached or unattached to other units. As stated *supra* at 524–525, when a court interprets an ordinance that was drafted without the situation in question

having been considered by the drafters, the court should interpret the ordinance in a reasonable manner. A determination of rent control applicability that turns on the physical structure of the building bears no reasonable relationship to the purposes underlying rent control.

■ It is well established in New Jersey that municipalities, in the exercise of their police power, may enact rent control ordinances. *Harry's Village, Inc. v. Egg Harbor Tp.,* 89 *N.J.* 576 (1982); *Helmsley v. Borough of Fort Lee,* 78 *N.J.* 200 (1978), appeal dismissed, 440 *U.S.* 978, 99 *S.Ct.* 1782, 60 *L.Ed.2d* 237 (1979); *Brunetti v. Borough of New Milford,* 68 *N.J.* 576 (1975); *Inganamort v. Borough of Fort Lee,* 62 *N.J.* 521 (1973). Following this Court's decision in *Inganamort,* rent control ordinances proliferated. Sheldon, Rethinking Rent Control: An Analysis of "Fair Return," 12 *Rutgers L.J.* 617, 624 (1981). Many municipalities have chosen, however, to cover only multiple dwellings and have exempted from rent control single-family or two-family rental units.

■ Various reasons for exempting housing units of two units or fewer have been advanced by the proponents of rent control. Professional landlords of large apartment complexes were perceived as being less caring or responsive to tenants' demands than landlords of single-family or two-family rental units. There was less fear of unequal bargaining power between tenants and landlords of single-family or two-family rental units. Further, it was recognized that municipalities are reluctant to subject landlords of single-family or two-family rental units to the burden of complying with the complicated and burdensome provisions existing in most rent control ordinances. *See generally David v. Vesta,* 45 *N.J.* 301, 315 (1965); *Albigese v. Jersey City,* 127 *N.J.Super.* 101, 116 (Law Div.), modified on other grounds, 129 *N.J.Super.* 567 (App.Div.1974).

The language in issue discloses that the drafters of the Ordinance intended to exempt housing units of two units or fewer from its provisions. It is reasonable to conclude that their

reasons for excluding such housing units were the same as the general reasons advanced by other municipalities. This conclusion is supported by the language of the Ordinance stating that rent control is "necessary and in the public interest with respect to the rental of housing space in multiple dwellings." It is further supported by the inclusion of standard, complex provisions contained therein governing the amount of rent a landlord may charge.

Reasons for exempting from rent control landlords of single or two-family rental units are equally applicable to landlords of condominiums. This is especially true because landlords of condominiums are likely to own only one or two condominium units. We believe that the drafters of the Ordinance did not perceive such small-scale landlords to have been the cause of the situation necessitating their Ordinance. Thus, we find that the drafters did not intend such landlords to be subject to the Ordinance.

## II

We also hold that the Ordinance does not subject owners of one or two condominium units in a building to rent control because of the State's condominium policy to place condominium owners on the same legal basis—insofar as consistent with the special problems of condominiums—as other owners of real estate property. *N.J.S.A.* 46:8B–1 through –38. Accordingly, the Ordinance must be construed so as not to discriminate against condominium owners.

In 1969 the Legislature recognized a new form of ownership of real property in enacting the Condominium Act, *N.J.S.A.* 46:8B–1 through –38.[6] Under the law of New Jersey, each condominium unit constitutes a separate parcel of real property

---

[6]Although the history of condominiums dates back hundreds of years, condominiums were essentially unheard of in the United States until the 1960's. Day & Fogel, *The Condominium Crisis*, 21 *Wash.U.L.Rev., Urb.L. Ann.* 9 (1981); *See also Siller v. Hartz Mountain Enterprises,* 93 *N.J.* 370, 375 n. 4 (1983).

which the owner may deal with as any other parcel of real property. *N.J.S.A.* 46:8B-4. Each condominium unit is capable of being held in any form of ownership recognized under the laws of New Jersey. *N.J.S.A.* 46:8B-5.

> All property taxes, special assessments and other charges imposed by any taxing authority shall be separately assessed against and collected on each unit as a single parcel . . . . All laws authorizing exemptions from taxation or deductions from tax bills shall be applicable to each individual unit to the same extent they are applicable to other separate property. [*N.J.S.A.* 46:8B-19.]

The courts of New Jersey have recognized the legislative intent expressed in the Condominium Act and have held that each condominium unit is to be treated under *N.J.S.A.* 54:4-3.6 (exempting property of nonprofit organizations from taxation) as an exclusive and separate unit for tax exemption purposes. *Perth Amboy General Hospital v. Perth Amboy,* 176 *N.J.Super.* 307, 313 (App.Div.1980). Similarly, it has been held that condominiums are separate parcels of real property for real estate licensing requirements. *Zaid v. Island House Condominium Association,* 170 *N.J.Super.* 206 (Ch.Div.1979). "Indeed, the Condominium Act makes it clear that a unit owner has the same unfettered ownership interest in his unit as any other owner of real property does in his property . . . ." *Id.* at 209.

Municipalities may not discriminate against condominium units in zoning by establishing requirements not equally applicable to all buildings of the same kind. *Claridge House One, Inc. v. Borough of Verona,* 490 *F.Supp.* 706 (D.N.J.), aff'd, 633 *F.2d* 209 (3d Cir.1980); *Plaza Joint Venture v. City of Atlantic City,* 174 *N.J.Super.* 231 (App.Div.1980); *Maplewood Village Tenants Association v. Maplewood Village,* 116 *N.J.Super.* 372 (Ch.Div.1971).

> [T]he legislative scheme regulating the creation, conversion and *operation* of condominiums . . . is so comprehensive as to clearly evidence a legislative intent to . . . *protect condominiums from discrimination and proscribe municipal regulation based on the form of ownership.* [*Plaza Joint Venture,* 174 *N.J.Super.* at 242 (emphasis added)]

Nor may a municipality impose a moratorium on conversion of rental units into condominiums. "[T]he New Jersey statutory

scheme affords condominiums . . . the same status as one-family homes." *Hampshire House Sponsor Corp. v. Fort Lee,* 172 *N.J.Super.* 426, 434 (Law Div.1979). The owner of a condominium unit, as does the owner of a house, owns his unit and pays taxes and utilities on it. Furthermore, we have held just this Term that a condominium owner has the right to sue the developer for damages to his individual unit. *Siller v. Hartz Mountain Enterprises,* 93 *N.J.* 370 (1983).

▪ We conclude, therefore, that the Legislature clearly intends that condominium owners be accorded generally the same rights and privileges as owners of separate and independent parcels of real property. One important exception to this rule exists,[7] and that exception is contained in the Legislature's express provisions regarding preconversion tenants.

### III

▪ Since 1978 the number of condominium conversions sharply increased in New Jersey and throughout the nation. *See* U.S. Dep't of Housing and Urban Development, *The Conversion of Rental Housing to Condominiums and Cooperatives* (1980); Lewin, "The Case for Governmental Action to Retard Condominium Conversion Activity," 1 *Yale L. & Pol'y Rev.* 126, 126 (1982). This rapid acceleration of conversions has produced heated policy debates. *See* Hearings held by Governor Byrne on January 31, 1981, *In the Matter of the Public Hearing on Condominium Conversions in New Jersey* (Hearings). The proponents argued that for many middle-income persons who cannot afford a conventional single family home, conversions offer

---

[7]The Legislature has also made exceptions for health and safety inspection purposes. Under the Hotel and Multiple Dwelling Law, *N.J.S.A.* 55:13A–1 through –28, multiple dwellings containing condominium or apartment units of 3 units or more are subject to inspection for housing code violations. *N.J.S.A.* 55:13A–3(k). Even here, however, condominiums are exempted from such inspections if they are owner-occupied units, built with at least two outside walls unattached to another dwelling (i.e. row houses) and built with all other walls being fire resistant. *L.*1983, *c.* 2.

the only opportunity to achieve home ownership. *Hearings, supra,* at 15, 21. The opponents argued the conversions exacerbate an already serious rental housing shortage and force the displacement of many individuals unable to buy their units. *Hearings, supra,* at 11, 27–28.

The New Jersey Legislature recognized these conflicting policies and has attempted to balance the interests of condominium owners and the interests of tenants. On one hand, the Legislature has provided that each condominium unit shall constitute a separate and distinct parcel of real property and each owner will be treated as the owner of a one-family house. On the other hand, the Legislature has acted to ensure that preconversion tenants are protected from immediate eviction. *N.J.S.A.* 2A:18–61.1 through .21.

In 1976 the New Jersey Legislature enacted *L.*1975, *c.* 311, the State's first condominium tenant protection law. This law gives a tenant the exclusive right for a 90-day period to purchase his or her condominium unit. *N.J.S.A.* 2A:18–61.8. If a tenant chooses not to purchase, he or she is entitled to three years' notice before being evicted because of the conversion. *N.J.S.A.* 2A:18–61.2 g. The tenant is also entitled to request the landlord to find him or her comparable housing and can secure additional extensions of his tenancy under certain conditions. *N.J.S.A.* 2A:18–61.11.

In 1981, six months after public hearings were held, the Legislature enacted the Senior Citizen and Disabled Protected Tenancy Act, *N.J.S.A.* 2A:18–61.22 through .39, *L.*1981, *c.* 226. Under this Act, senior citizens and disabled persons cannot be evicted for up to 40 years if they meet certain age, residency, and income requirements.

When enacting the 1976 law, the Legislature realized that it would be futile to give a preconversion tenant protection from eviction for a certain period of time if during that time rent could be increased without limitation. As a practical matter, a landlord's unrestricted right to increase rent results in the

landlord's ability to force a preconversion tenant out of the unit, thus rendering the eviction protection laws meaningless. *See Hearings, supra,* at 29.

Prior to the 1981 Act, preconversion tenants entitled to three years' notice of termination were protected against unreasonable rent increases. *N.J.S.A.* 2A:18–61.11. In the Senior Citizen and Disabled Protected Tenancy Act in 1981, the Legislature provided that with respect to both preconversion tenants subject to three years' notice and senior citizens and disabled tenants with protected tenancy status, no rent increase could exceed the rent increase allowed by the municipality's rent control ordinance. *N.J.S.A.* 2A:18–61.31. For those municipalities without rent control ordinances, rent increases continue to be judged by a general reasonableness standard. *Id.*

Municipalities can choose whether or not to control rent. If a municipality chooses to control rent, all preconversion tenants during the period in which they are protected from eviction are also protected by the rent control ordinance. If there is no rent control ordinance in effect, then these preconversion tenants are protected against unreasonable rent increases. *N.J.S.A.* 2A:18–61.31.

In the first instance, the applicability of an ordinance to owners of two or less condominium units depends on the terms of the ordinance in issue.[8] Under this Ordinance, we hold that the applicability of the Ordinance to condominiums depends on both the nature of the condominium owner and the status of the tenant. If an owner owns three or more condominium units in one building, each unit is subject to rent control. If an owner owns two or less condominium units in one building, a unit rented to a postconversion tenant or rented to a preconversion tenant who is no longer protected from eviction under *N.J.S.A.*

---

[8]We do not reach the issue of whether the Township, had it intended its ordinance to apply to condominium units, would have had the power to legislate in this area. That issue is not before us, and we express no opinion on it.

2A:18–61.1 *et seq.* or *N.J.S.A.* 2A:18–61.22 *et seq.* is exempt from the Ordinance. However, if such a unit is rented to a protected preconversion tenant, the rent for such tenant cannot be increased above that allowed under the Ordinance.

The decision in *G.D. Management Co. v. Negri,* 182 *N.J.Super.* 409 (App.Div.1982) is consistent with our decision here. In *G.D. Management,* a Hackensack rent ordinance applied to "any building or structure rented or offered for rent to three (3) or more tenants or family units for residential purposes." *Id.* at 412. The Appellate Division there concluded that "the ordinance is textually ambiguous" in its application to condominiums. *Id.* Because the tenants in that case were preconversion tenants, the court properly considered the intent of the Legislature in enacting the anti-eviction law *N.J.S.A.* 2A:18–61.11, which provides for reasonable rent increases. Further, the court noted that the Department of Community Affairs adopted *N.J. A.C.* 5:24–1.12(c), effective September 10, 1981. That regulation specifically provides that a reasonable rent for a preconversion tenant is the rent set forth in the rent control ordinance. The Appellate Division held the regulation was merely declarative of the original legislative intent. *Id.* at 415.

Here and in *G.D. Management,* it is recognized that the Legislature intended that the rent of a preconversion tenant, protected from eviction by *N.J.S.A.* 2A:18–61.1 through .21 or by *N.J.S.A.* 2A:18–61.22 through .39, cannot be increased above the amount allowed by the municipal rent control ordinance in effect. The protection afforded such preconversion tenants is statutorily imposed by the State. The ordinance merely sets the standard pursuant to the statutory requirements.

## IV

Applying our holding to the facts of this case, we note that although the parties' briefs indicated there is one preconversion tenant in Carnegie Commons, during oral argument the parties indicated there may be more than one such tenant. We further

note that there is no evidence in the record as to whether any preconversion tenant meets the qualifications for protection under the anti-eviction act or the Senior Citizen and Disabled Protected Tenancy Act.

Accordingly, we hereby affirm the Appellate Division's judgment remanding the cause. However, on remand the issues shall also include a determination of the status of each tenant and the applicability of the rent control ordinance to each tenant.

*For affirmance as modified*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.