NUTLEY INVESTMENT GROUP, A PARTNERSHIP, PLAINTIFF-APPELLANT, v. RENT LEVELING BOARD OF THE TOWNSHIP OF NUTLEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 20, 1985—Decided December 31, 1985.

Before Judges BRODY, GAYNOR and BAIME.

*James A. Kridel, Jr.,* attorney for appellant (*Mark Mendelowitz,* on the letter brief).

*Michael E. Cozine,* attorney for respondent.

The opinion of the court was delivered by

BRODY, J.A.D.

Defendant Rent Leveling Board (the Board) ruled that plaintiff, a partnership owning rental dwelling units in a condominium complex, is subject to the municipal rent control ordinance. The ruling was upheld by summary judgment entered in the Law Division. Plaintiff appeals and we affirm.

Sleepy Hollow Condominiums was constructed as a five-building, 92-dwelling-unit condominium complex. The original developer, Sleepy Hollow Development Group (SHDG), was also a partnership. SHDG sold over half the units to owner-occupiers and rented the rest in expectation of their eventual sale to owner-occupiers. Thereafter, SHDG sold 18 rental units to

plaintiff and 16 to LLGYMMR, another partnership. William Govel and James Yacenda were partners in all three partnerships. We do not know from this record the number or identity of the other partners.

The present action resulted from a notice of rent increase that plaintiff gave the tenants of Unit E–6 at the end of the one-year term of their written lease with SHDG. SHDG sold plaintiff Unit E–6 and two other rental units in the same building, and sold LLDYMMR two rental units in that building. After receiving the notice of rent increase, the tenants filed a complaint with the Board alleging that the increase exceeded the amount allowable under the rent control ordinance. Plaintiff contended that it was exempt under the ordinance because it did not own four or more rental dwelling units in the building containing Unit E–6.

The ordinance subjects a "landlord" to rent control. A "landlord" is defined as "[a]n owner, lessor, sublessor or any other person entitled to receive rent for the use and occupancy of any housing space. . . ." "Housing space" is defined as "[u]nits of dwelling space in multiple dwellings rented or offered for rent . . . ." A "multiple dwelling" is defined as "[a]ny building or structure or portion thereof and any land appurtenant of four (4) or more dwelling units, the tenant or tenants of each of which dwelling unit lives or live independently of each other." Read literally, the ordinance does not exempt plaintiff from rent control because Unit E–6 is one of at least four rental dwelling units in a building or structure.

This is so because the ordinance establishes coverage based on the number of units in a building or structure, not on the number of units owned by the landlord. Thus the owner of three or fewer rental dwelling units is exempt if the units are in a building or structure containing no more than three rental dwelling units, but is covered if his units are in a building containing four or more rental dwelling units. The drafters assumed that whoever owned one rental dwelling unit in a building owned them all.

They did not consider that different units in a condominium building may have different owners.

This feature of condominium ownership was also not considered by the drafters of the rent control ordinance in *AMN, Inc. v. So. Bruns. Tp. Rent Leveling Bd.*, 93 *N.J.* 518 (1983). The ordinance there exempted "housing units of two units or less." The landlord owned only two rental dwelling units in a building containing more than two. The Court held that the owner was exempt because he must be treated like the owner of a building containing only two rental dwelling units. The Court ruled that

> ... when a court interprets an ordinance that was drafted without the situation in question having been considered by the drafters, the court should interpret the ordinance in a reasonable manner. A determination of rent control applicability that turns on the physical structure of the building bears no reasonable relationship to the purposes underlying rent control. [*Id.* at 525–526]

The Court then summarized the reasons given in prior cases for exempting owners of small holdings from rent control:

> Professional landlords of large apartment complexes were perceived as being less caring or responsive to tenants' demands than landlords of single-family or two-family rental units. There was less fear of unequal bargaining power between tenants and landlords of single-family or two-family rental units. Further, it was recognized that municipalities are reluctant to subject landlords of single-family or two-family rental units to the burden of complying with the complicated and burdensome provisions existing in most rent control ordinances. [*Id.* at 526]

Plaintiff here contends that because it owned only three rental units in the building containing Unit E–6, *AMN* requires that it be treated like the owner of a three-family house and therefore it was exempt. The Board disagreed for two reasons. First it determined that although plaintiff owned only three rental units in the building that contained Unit E–6, it was the "beneficial owner" of the two units owned by LLGYMMR. The Board did not explain what it meant by "beneficial owner." It simply treated the two partnerships as one because Govel and Yacenda were two of the partners in each. Alternatively the Board determined that all 18 units that plaintiff owned in the complex should be counted to determine whether plaintiff was

the owner of four or more units and therefore subject to the ordinance.

In affirming the Board, the trial judge determined that the "landlord" of Unit E–6 was SHDG because it had first leased the unit to the tenants at a time when SHDG owned four or more rental units in the building. The judge held that plaintiff was subject to the ordinance as SHDG's successor. Alternatively, the trial judge determined that because Govel and Yacenda were partners in plaintiff and LLGYMMR, both partnerships were under the same control and therefore their total holdings in the building, five rental units including Unit E–6, must be counted as owned by plaintiff. The trial judge did not pass on the Board's alternate determination that all 18 units that plaintiff owned in the complex must be counted, not just the three it owned in the building containing Unit E–6. We reject the trial judge's reasoning but affirm on the Board's alternate approach. The number of rental units plaintiff owned in the complex must be aggregated to determine whether Unit E–6 was contained in "[a]ny building or structure or portion thereof . . . of four (4) or more dwelling units . . . ."

The ordinance provides that "[a]t an anniversary date a landlord may claim an increase in basic rent." An "anniversary date" is defined to include "[i]n the case of premises occupied under a written lease having a stated term of at least one (1) year, the day next following the expiration date specified in the lease; . . . ." The landlord referred to in the ordinance is the landlord on the anniversary date, not the landlord from whom the tenant first rented the premises. A prior landlord cannot "claim an increase in basic rent" after he has sold the unit. Plaintiff, not SHGD, was the landlord on the anniversary date and its holdings on that date determine whether it was exempt from rent control under the ordinance.

On the anniversary date plaintiff owned only three rental units in the building containing Unit E–6. The fact that plaintiff shared two partners with LLGYMMR, the owner of two

other rental units in the building, does not necessarily mean that plaintiff owned five units in the building. There is no evidence in this record to support the trial judge's finding that plaintiff and LLGYMMR were directly or indirectly under the same control. A fuller exploration of the facts may reveal that to be true, but it cannot be assumed on this record.

We need not remand for a trial of the ownership issue, however, because plaintiff owned 18 rental units in the complex and is therefore a landlord "of four (4) or more dwelling units" in "[a]ny bulding or structure...." The ordinance does not define "building or structure." We learn from *AMN* that where, as here, the drafters of a rent control ordinance did not consider that individual rental dwelling units in a multiple dwelling may have different owners, the court must interpret the ordinance in a way that reasonably treats the special problems posed by that situation.

The Court in *AMN* noted that the South Brunswick rent control ordinance, which exempts owners of two or fewer units, made two distinctions that "can lead to unfair, illogical, and anomalous results." The first distinction subjects an owner to rent control, who would otherwise have been exempt because he owns only two units in a building, if the building contains other units. The second distinction subjects an owner to rent control, who would have been exempt had he owned two one-unit buildings, if the units are in one building that contains other units. The Court described these two unsupportable distinctions as follows:

> An owner of two condominium units in a building consisting of two or fewer condominium units would not be subject to rent control, but the owner of a single condominium unit in a building consisting of three or more condominium units would be subject to rent control. Likewise, although the owner of a detached single family house would not be subject to rent control, if three or more single family dwellings were attached, as is often the case with town houses, each would be subject to rent control. [*AMN, Inc. v. So. Bruns. Tp. Rent Leveling Bd.*, 93 *N.J.* at 525]

In rejecting both distinctions, the Court said that there is "no reason why the drafters of the Ordinance would have intended

to treat owners of single dwelling units differently, based solely on whether their units are attached or unattached to other units." *Ibid.*

The Nutley ordinance makes the same two unsupportable distinctions. The Court in *AMN* eliminated the first distinction in the South Brunswick ordinance by holding that the landlord of only two rental dwelling units in the same building was exempt even though the building contained three or more condominium units. We now eliminate the second distinction in the Nutley ordinance and hold that the landlord of four or more rental dwelling units is subject to rent control even though the units are in separate buildings.

The reasoning in *AMN*, though applied in a case that focused on the definition of exemption from rent control, applies equally here where the focus is on coverage. Defining exemption and defining coverage are merely complementary ways of expressing the same criteria. Both definitions invoke the same concerns. We therefore define "building or structure" as used in the Nutley ordinance to include all buildings in the Sleepy Hollow Condominiums Complex.

Affirmed.