defendant was found guilty. In all other respects the judgment of conviction is affirmed.

741 A.2d 121

FINANCIAL SERVICES, L.L.C. AND SHELL OIL COMPANY, PLAINTIFFS–APPELLANTS, v. ZONING BOARD OF ADJUST-MENT OF THE BOROUGH OF LITTLE FERRY AND NICH-OLAS MELFI, ZONING ADMINISTRATOR/ CONSTRUCTION CODE OFFICIAL, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 26, 1999—Decided December 7, 1999.

Before Judges MUIR, Jr., WALLACE, Jr., and CUFF.

*Peter J. Scandariato,* argued the cause for appellants (*Alampi, Arturi, D'Argenio & Guaglardi,* attorneys; *Mr. Scandariato,* of counsel and on the brief).

*Michael B. Adelhock,* argued the cause for respondents.

The opinion of the court was delivered by

MUIR, Jr., P.J.A.D.

This appeal requires our review of a decision by defendant Little Ferry Zoning Board of Adjustment (Board), which denied plaintiffs' application to permit a check-cashing business in an existing structure at the site of a gas station located on a nonconforming lot. The appeal requires interpretation of the Little Ferry Zoning Ordinance and, alternatively, a determination as to whether plaintiffs proved entitlement to a use variance under *N.J.S.A.* 40:55D–70d, as explicated in *Medici v. BPR Co.,* 107 *N.J.* 1, 526 *A.*2d 109 (1987). The trial court affirmed the decision of the Board, and plaintiffs appeal. We affirm.

*I*

Plaintiff Shell Oil Company leases the subject property in Little Ferry for a gas station, which it subleases to the operator of the station. Financial Services proposes to sublease from Shell Oil an existing structure on the property, renovate it, and conduct a check-cashing business. The property fronts on Route 46 and is located in an area zoned "B–H Highway and Regional Business Zone." In pertinent part, the restrictions on uses in the B–H zone are as follows:

B. Permitted uses. In the B–H Highway and Regional Business Zone, no buildings or premises shall be used and no building or part of a building shall be erected, constructed or altered which shall be arranged, intended or designed to be used for any purpose other than the following uses:

(1) Regionally oriented retail shopping centers consisting of integrated developments of such uses as retail stores and shops and personal service establishments housed in an enclosed building or buildings and utilizing such common

facilities as customer parking areas, pedestrian walks, truck loading and unloading space, utilities and sanitary facilities and gasoline filling stations.

(2) Theaters and auditoriums.

C. Conditionally permitted uses.

(1) Uses. Conditionally permitted uses shall be as follows:

(a) Professional, business and governmental offices.

(b) Banks and savings and loan institutions.

(c) Post offices.

(d) Hotels and motels and restaurants.

. . . .

E. Prohibited uses. Any uses other than those uses permitted by Subsections A through D of this section shall be prohibited without in any way limiting the generality and prohibition of this section. Nothing contained in this Article shall be construed to permit any of the following uses in any B–H Highway and Regional Business Zone:

. . . .

(7) Gasoline service stations.

. . . .

Other pertinent provisions of the ordinance provide the following definitions:

1. *Conditional Use:*

A use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use, as contained in the Zoning Ordinance, and upon the issuance of an authorization therefor by the Planning Board.

2. *Building, Accessory:*

A building the use of which is customarily incidental to that of the main or principal building and which is located in the same lot as the principal building.

3. *Lot:*

One (1) or more contiguous parcels of land united by a common interest or use, considered as a unit, occupied by *a* principal building or use and its accessory buildings and uses, if any, including the open spaces on such unit of land. It may or may not coincide with the deed description thereof or the boundaries of the same as shown on the Tax Assessment Map of the borough or a map filed for record or otherwise. [Emphasis added.]

4. *Use, Accessory:*

A use which is customarily incidental and subordinate to the principal use of a lot or a building and which is located on the same lot.

5. *Use or Structure, Principal:*

The primary or predominate use of any lot, or structure devoted to the principal use.

6. *Use, Specifically Prohibited:*
   A use or building which is not allowed or permitted within a zoning district. The schedule of district regulations sets forth the uses or buildings which are permitted within each district. Those uses or buildings not permitted are prohibited. Those uses listed as uses specifically prohibited reiterate this prohibition regarding those particular uses to avoid confusion.

The gas station is located on a nonconforming lot. The lot is not only some 46,000 square feet below the required minimum area but also has insufficient depth, and the structures of the gas station violate both front and rear yard setback requirements.

Financial Services and Frank Citino (one of its principals), with Shell's consent, first sought a building permit to allow remodeling of an existing 540 square foot building to house a check-cashing business and an ATM machine. At the time, the station operator used the building for storage, although it was originally designed for a food mart. The Board had granted a variance to permit use of the building as a food mart. However, the operator currently sells food snacks from a kiosk that is also used for other conventional gas station purposes.

The Borough's construction official denied the application. The official concluded the zoning ordinance proscribed the mixed uses on the same building lot. The application to the Zoning Board of Adjustment ensued.

Citino, in his testimony before the Board, described the proposed use as "a non-bank bank." He noted check-cashing businesses are licensed and regulated by the State. He described the operation as a financial convenience store for people who cannot afford to wait the typical "clearing" period to access their money. He also stated the operation would allow people without checking accounts to pay their bills. Citino represented his business, which went under the name Money Stop, cashed many different kinds of checks but generally not personal checks due to the potential they might not be collectible.

The Board also heard testimony from planning and traffic experts. The plaintiffs' traffic expert, who conducted traffic counts, essentially found no detrimental impact from the traffic

the proposed business would generate. He found the applicants' proposed five parking spaces would adequately serve the Money Stop customers.

The plaintiffs' planner essentially concluded the proposed use was consistent with those of the B–H zone and reflected compatibility with the Borough's master plan goals of encouraging new commercial business on major thoroughfares. The planner analogized the proposed use to either an office or personal service business but acknowledged its services were not as comprehensive as those provided by a bank. Essentially, the planner found the proposed use consistent with the intent and purpose of the B–H zone plan and zoning ordinance.

The Board hired a traffic expert and a planner who countervailed viewpoints of plaintiffs' experts. The traffic expert testified the business would generate additional traffic which, in his opinion, would not create a "significant concern." However, he found concern in the fact Route 46 had no shoulder for tractor trailers to pull to the side to park. Moreover, although he conceded the five proposed parking spaces met the requirements of the zoning ordinance, he concluded about nine spaces were required to provide parking for traffic that would be generated.

The Board's hired planner testified that, although the proposed use was not expressly prohibited in the B–H zone, it was not a permitted use. He noted the ordinance was exclusionary for those uses not specifically permitted. He also testified the proposed use did not qualify as a conditional use and, therefore, a special reasons variance was required. He then asserted that a check-cashing business was not an inherently beneficial use nor one well suited for the undersized lot which already contained two uses. He found a lack of evidence to support any conclusion the proposed use would not be detrimental to the neighborhood. He finalized his testimony by stating the proposed use was inconsistent with both the Borough's master plan and zone plan.

Prior to voting on the resolution under review, Board members, all of whom voted to deny plaintiffs' application, offered their

reasons for doing so. Those reasons included their belief that the Money Stop would (1) result in increased traffic and tractor-trailer congestion, (2) not have an adequate number of parking spaces, (3) create a hardship to the neighbors from the introduction of a third use on the property, and (4) present safety concerns. They also believed that plaintiffs failed to show that the application (1) conformed to Little Ferry's master plan, (2) would benefit the neighborhood, and (3) met any one of the fifteen goals of zoning articulated in the Municipal Land Use Law. *See N.J.S.A.* 40:55D-2. In addition, the Board members believed that plaintiffs had failed to (1) demonstrate any special reasons; (2) meet the negative criteria, particularly because the lot was undersized; (3) show that the negative criteria outweighed the positive criteria; and (4) demonstrate an actual need for a check-cashing business. Although the ensuing resolution by the Board recited it was based on plaintiffs' application for use variances, the Board included in its findings a determination that the proposed business was not a conditional use under the Borough's zoning ordinance. The resolution, after a six-page preface containing a mixture of testimony, recitations, findings, summary of applicants' counsel, and legal advice Board counsel gave to the Board, made the following findings of fact:

A. The applicant had consent of the owner to proceed on behalf of the owner in this application by consent letter dated July 7, 1997, along with an Affidavit of Ownership of R.D.S. Realty Assoc.;

B. There was no testimony or evidence to indicate any harm to the owner if the relief was not granted;

C. The location is a non-conforming, undersized lot presently being utilized with two non-conforming uses;

D. The application failed to demonstrate hardship or the presence of enhanced special reasons for the proposed check cashing use;

E. The proposed use and site plan changes would cause a significant negative impact upon the master plan and surrounding neighbors, including an increase in traffic volume, on an undersized property, and with negative impact upon the adjacent residential street; the third use on the undersized lot would increase the hardship to the adjacent neighbors pursuant to the testimony regarding potential increase of customers doubling the traffic on and off the site during peak hours; the potential of tractor trailer vehicles entering the

property on the undersized lot, the need for parking spaces during peak hours causing potential illegal parking;

F. The proposed use is not a conditional use in that the testimony elicited that the check cashing [sic] is not a bank, nor can the prerequisite conditions to allow the use be satisfied;

G. The enhanced special reasons were not presented by the applicant;

H. The proposed mixed use conflicts with the purpose of the master plan in defining the redevelopment of the Route 46 corridor for increased property lot sizes and uses enumerated in the B–H zone;

I. The proposed location is not suitable and alternate properties in the corridor could accommodate such a use without increasing the number of uses and intensity on an undersized lot.

Based on its findings, the Board concluded it could not grant the relief requested "without substantial detriment to the public good and without substantially impairing the intent and purposes of the zone plan and zoning ordinances of the Borough of Little Ferry."

The trial judge affirmed the Board's decision. In his opinion, the judge first concluded the proposed use was neither a permitted nor a conditional use. Then, he sustained the Board's determination plaintiffs failed to satisfy the criteria for a use variance under *N.J.S.A.* 40:55D–70d as explicated in *Medici, supra*, 107 *N.J.* at 19–21, 526 *A.*2d 109.

## II

Plaintiffs propound several grounds to support their claim the trial judge and the Board erred. First, they argue a check-cashing business is a use accessory to the gas station, which they contend is a permitted use in the B–H zone. Alternatively, they argue, because a check-cashing business is the equivalent of a bank or savings and loan association, the proposed use is a permitted conditional use. Relying on the conditional use premise, plaintiffs then argue they were required only to satisfy the criteria of a conditional use variance (*N.J.S.A.* 40:55D–7d(3)) and not the criteria of a use variance (*N.J.S.A.* 40:55D–7d(1)). *See Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment*, 138 *N.J.* 285, 650 *A.*2d 340 (1994). Finally, failing success on the latter arguments, they contend their proofs before the Board met

the criteria for a use variance. *See N.J.S.A.* 40:55D–70d(1); *Medici, supra.* We address each of these issues and, in the course of doing so, highlight a basic misconception interwoven through plaintiffs' interpretation of the zoning ordinance.

### A

We turn first to the zoning ordinance interpretations advocated. We find the plaintiffs mistaken.

Consistent with the zoning authority vested by the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to –129, particularly *N.J.S.A.* 40:55D–62 and –65, the Borough of Little Ferry Zoning Ordinance specifies the uses permitted in the B–H zone. At the same time, the ordinance generally restricts the extent of those uses. Plaintiffs misconstrue the zoning ordinance in both areas.

Municipal zoning ordinances are judicially construed under the standards applicable to statutory construction. *See AMN, Inc. v. South Brunswick Tp. Rent Leveling Bd.,* 93 *N.J.* 518, 524–25, 461 *A.2d* 1138 (1983). Our principal duty is to ascertain legislative intent. *Id.* at 525, 461 *A.2d* 1138. The initial predicate of that inquiry is the plain language of the ordinance applied to the facts. *See Watt v. Mayor and Council, Borough of Franklin,* 21 *N.J.* 274, 277, 121 *A.2d* 499 (1956). Concomitantly, the language used must be given its ordinary meaning.

The plain language of the ordinance makes it clear a cash-checking business is not an accessory use to a permitted use, nor is it a conditional use and, most significantly, it is not a use that can exist on the subject lot with the current nonconforming principal use, a gasoline station.

In *Charlie Brown of Chatham, Inc. v. Chatham Bd. of Adjustment,* 202 *N.J.Super.* 312, 324, 495 *A.2d* 119 (App.Div.1985), we identified the proof required to satisfy the Chatham Zoning Ordinance definition of accessory use, a definition that is nearly identical to that in the Little Ferry Zoning Ordinance. In *Charlie Brown,* we explained that to qualify as an accessory use, the

proposed use had to be one customarily incidental and subordinate to a permitted principal use. The terms, customarily incidental and subordinate, entail proof a proposed use is of minor significance and a use commonly, habitually, and by long-standing practice established as reasonably associated with the permitted principal use. *Ibid.*

We find no proof to satisfy a conclusion a check-cashing business is a use accessory to a gas station operation. The proposed commercial operation is not only not subordinate to the gas station use and is not of minor significance, but it is also not a use that has any common, habitual, or long-standing association with a gas station. Its failure to qualify as an accessory use makes it a principal use.

Beyond that, the Shell station at issue is a nonconforming use in the B–H zone. The B–H zone permits gas stations only as a part of regionally oriented shopping centers. Otherwise, gas stations are expressly prohibited uses. The ordinance specifically provides uses expressly prohibited are not permitted. The Shell station is not part of a shopping center. It is, therefore, a prohibited use and, consequently, a nonconforming use. At the same time, it is the principal use on the subject lot.

Given the Shell station's nonconforming, principal use status, the ordinance proscribes a second principal use, the check-cashing business on the same property. The zoning ordinance by definition of building lot, particularly when read with the definition of principal use, limits the use of a building lot to *a* principal use and its accessory uses. The common meaning of "a" is one. Consequently, the ordinance does not permit two principal uses on the lot in question. Simply put, two principal uses are not permitted on any building lot under circumstances that do not constitute a regional shopping center. Installation of a second principal use would intensify the use beyond the restrictions contained in the ordinance. The intensified use would qualify as a violation of the ordinance restrictions fostering need for a use variance under *N.J.S.A.* 40:55D–7d(1). Moreover, even if the check-cashing could

be deemed a use accessory to the gas station, the proposed use would amount to the expansion of a nonconforming use, which would also require a variance under *N.J.S.A.* 40:55D–70d. *See* Cox, *New Jersey Zoning and Land Use Administration,* § 10.5, p. 207 (1998).

■ The dual principal use restrictions make the proposed use, conditional or not, a use not permitted under the Little Ferry Zoning Ordinance. Even so, we are satisfied a check-cashing business has insufficient comparability to a bank to qualify as a conditional use under the ordinance. The comprehensive nature of a bank, when compared to that of the check-cashing business, demonstrates the lack of comparability.

*B*

■ Finally, we reject plaintiffs' contention they presented sufficient evidence to the Board to satisfy the criteria governing a use variance. *See N.J.S.A.* 40:55D–70d(1); *Medici, supra.* The Supreme Court in *Medici* addressed the scope of proof required to satisfy the statutory special needs standard when a use variance application relates to a commercial use.

> That standard has generally been defined in relation to the purposes of zoning, *see N.J.S.A.* 40:55D–2, and our decisions have emphasized the promotion of the general welfare as the zoning purpose that most clearly amplifies the meaning of special reasons. Although certain commercial uses may inherently serve the general welfare in a particular community, the typical commercial use can be better described as a convenience to its patrons than as an inherent benefit to the general welfare. For such uses, any benefit to the general welfare derives not from the use itself but from the development of a site in the community that is particularly appropriate for that very enterprise.
>
> [*Id.* at 18, 526 *A.*2d 109 (citation omitted).]

Additionally, *Medici* held that to satisfy the negative criteria of *N.J.S.A.* 40:55D–70, when the application relates to a commercial venture, an applicant must demonstrate "an enhanced quality of proof ... that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." *Medici, supra,* 107 *N.J.* at 21, 526 *A.*2d 109.

The Board essentially concluded plaintiffs failed to demonstrate the site in question was particularly appropriate for a check-cashing business and failed to demonstrate the enhanced quality of proof on the negative criteria. Our review of the record satisfies us there is no basis for disturbing that ruling. *See Kramer v. Board of Adjustment of Sea Girt,* 45 *N.J.* 268, 296–97, 212 *A.*2d 153 (1965).

## C

In sum, we hold a check-cashing business in the Borough of Little Ferry business highway zone, on a lot that is nonconforming and contains a nonconforming use, is a use prohibited by the terms of the Borough's Zoning Ordinance. This is so predominantly because the proposed use would constitute a second principal use on the lot in question. Therefore, a use variance was required, and the record supports the conclusion plaintiffs failed to satisfy their burden of proving entitlement to that variance.

Affirmed.